OPINION OF THE COURT
Timothy J. Lawliss, J.
*883 The facts of this case are both straightforward and common in the context of permanency hearings under article 10-A of the Family Court Act. The subject child is freed for adoption.[1] The child is now living in a preadoptive home and all parties are working to finalize the adoption. As the child is freed for adoption, but the adoption has not yet been finalized, the court is required to conduct a permanency hearing. (See Family Ct Act §§ 1088, 1089 [a] [1], [3]; [d].)[2] Because the child is not being returned to a parent as a result of this permanency hearing (the child having been freed for adoption), the court is statutorily required to determine whether the permanency goal for the child should be approved or modified. (See Family Ct Act § 1089 [d] [2] [i].) When making such a determination, the statute provides that
“[t]he permanency goal may be determined to be:
“(A) return to parent;
“(B) placement for adoption with the local social services official filing a petition for termination of parental rights;
“(C) referral for legal guardianship;
“(D) permanent placement with a fit and willing relative; or
“(E) placement in another planned permanent living arrangement that includes a significant connection to an adult willing to be a permanency resource for the child if the local social services official has documented to the court a compelling reason for determining that it would not be in the best interests of the child to return home, be referred for termination of parental rights and placed for adoption, placed with a fit and willing relative, or placed with a legal guardian” (see Family Ct Act § 1089 [d] [2] [i]).
On these common facts, none of the listed permanency hearing goals are logical or rational.
Option (A), return to parent, is obviously not appropriate. The parents’ parental rights have already been permanently terminated and the child has not yet been adopted. Thus, the child has no legal parent.
*884 Option (B), placement for adoption with the local social services official filing a petition for termination of parental rights, is also illogical. There is no need to file a petition for termination of parental rights because the parents’ rights have already-been permanently terminated. Furthermore, the child is already placed in a preadoptive home. Random House Webster’s Unabridged Dictionary (at 817 [2d ed 2001]) defines a goal as “the result or achievement towards which effort is directed; aim; end.” A goal is something that is being worked toward, not something that has already been accomplished. Certainly one can achieve a goal, but once one achieves the goal, it is an achievement, it is no longer a current goal. In this case, the child has already been placed in a preadoptive home and there is no need to work toward the filing of a petition for a termination of parental rights.
Assuming without finding that option (C), referral for legal guardianship, is a legally available option, it is simply not the goal in this case. As indicated above, everyone involved in the case, including the court, believes that the appropriate goal is the finalization of the adoption process.
Assuming without finding that option (D), permanent placement with a fit and willing relative, is a legally available option, it also is simply not the goal in this case. Again, as indicated above, everyone involved in the case, including the court, believes that the appropriate goal is the finalization of the adoption process.
Option (E), placement in another planned permanent living arrangement that includes a significant connection to an adult willing to be a permanency resource for the child, may only be selected when certain conditions are true. Among those conditions that must be true for the court to select this option is the requirement that the local social services official has documented to the court a compelling reason for determining that it would not be in the best interest of the child to be placed for adoption. Obviously, no such compelling reason has been documented in this case. Indeed, quite the opposite. The local social services agency and all others involved in the case are advocating that placement for adoption is in the child’s best interest. Thus, option (E) is not available to the court.
Clearly, none of the statutorily enumerated permanency hearing goals is the true goal in this case. The true and appropriate goal in this case is the finalization of the adoption. This presents an obvious question. Is the court limited to the statutorily *885 enumerated goals or is it permissible for the court to set a goal other than those enumerated in the statute?
At the outset, the court notes that the statutory language includes the ambiguous term “may,” when it states: “The permanency goal may be determined to be” (A), (B), (C), (D) or (E) (Family Ct Act § 1089 [d] [2] [i] [emphasis added]). Does the use of the term “may” imply that the enumerated goals are nonexclusive?
In search of guidance, the court has reviewed the uniform forms prescribed by the state administrator (Family Ct Act § 214; see 22 NYCRR subtit D, ch IV). Specifically, the court has reviewed form PH-6, which has been prescribed as a permanency hearing order regarding children who have been freed for adoption. Unfortunately the review of this form only adds to the confusion.
Official form PH-6 offers five options for a permanency planning goal: (1) “placement for adoption by [specify date], including consideration of interstate options”; (2) “if already in a preadoptive home, petition for adoption by [specify date]”; (3) “referral for legal guardianship by [specify name and date]”; (4) “permanent placement with the following fit and willing relative [specify name] by [specify date]”; and (5) “permanent placement in the following alternative planned living arrangement [specify]” (with a selection of suboptions).
Obviously, all these options do not match the statutory options described above. Although many of the officially promulgated forms contain extensive footnotes, there is no footnote in form PH-6 which explains the basis for including these options in the official form.
The only footnote related to this section reads “Permanency plans for freed children include only adoption or alternative planned living arrangement, NOT referral for legal guardianship or placement with a fit and willing relative.” (Form PH-6, at 4 n 1.) Essentially, the footnote asserts that statutory options (C) and (D) listed above are not appropriate options for children freed for adoption. Nevertheless, statutory options (C) and (D) are specifically listed as the third and fourth option in the form itself. Thus, the form order and the footnote contained in the form order appear to directly contradict each other.
Further, none of the options specified in form PH-6 are logical or rational on the common facts of this case. The first option, placement for adoption, appears to contemplate a preadop *886 tive placement. As noted above, that is no longer the goal of this case because it has already been achieved. The goal in this case is not a preadoptive placement, but rather the finalization of the adoption. The second option, if already in a preadoptive home, petition for adoption by a specified date, is moving closer to the facts of this case; however, the option does not apply because the petition for adoption has already been filed. Again, the filing of a petition for adoption is an achievement in this case, not a future goal. Options (3) and (4) appear to parallel options (D) and (E) of the statute and were discussed above. They are simply inapplicable in this case because, as discussed above, they are not in fact the goal of the court or any party. Option (5) appears to parallel statutory option (E) and thus is not available to the court because the requirements to select option (E) under the statute have not and could not be satisfied in this case.
The official form does not provide any straightforward guidance with respect to the presented question. At best, the form implies by the inclusion of options (1) and (2), which do not match the statutory language, that the statutorily enumerated goals are a nonexclusive list of permissible goals. Even drawing this conclusion from the form is a bit of a reach.
Article 10-A of the Family Court Act was created in response to federal legislation and, accordingly, the court has reviewed the promoting federal legislation for guidance. The Adoption Assistance and Child Welfare Act of 1980 (title iy part E of the Social Security Act) established “a federal reimbursement program for certain expenses incurred by the States in administering foster care and adoption services. The Act provides that States will be reimbursed for a percentage of foster care and adoption assistance payments when the State satisfies the requirements of the Act” (Suter v Artist M., 503 US 347, 350-351 [1992], citing 42 USC §§ 672-674, 675 [4] [A]).
To “participate in the program, States must submit a plan to the Secretary of Health and Human Services for approval” (id. at 351, citing 42 USC §§ 670, 671). 42 USC § 671 sets forth qualifications that a state plan must contain, including:
“(16) provides for the development of a case plan (as defined in section 675(1) of this title) for each child receiving foster care maintenance payments under the State plan and provides for a case review system which meets the requirements described in section 675(5) (B) of this title with respect to each such child” (42 USC § 671 [a] [16] [emphasis add *887 ed]).
Pursuant to 42 USC § 675 (5) (C), the case review system means that a procedure for assuring that
“(i) procedural safeguards will be applied, among other things, to assure each child in foster care under the supervision of the State of a permanency hearing to be held, in a family or juvenile court. . . no later than 12 months after the date the child is considered to have entered foster care (as determined under subparagraph (F)) (and not less frequently than every 12 months thereafter during the continuation of foster care), which hearing shall determine the permanency plan for the child that includes whether, and if applicable when, the child will be returned to the parent, placed for adoption and the State will file a petition for termination of parental rights, or referred for legal guardianship, or (in cases where the State agency has documented to the State court a compelling reason for determining that it would not be in the best interests of the child to return home, be referred for termination of parental rights, or be placed for adoption, with a fit and willing relative, or with a legal guardian) placed in another planned permanent living arrangement” (emphasis added).
Code of Federal Regulations, title 45, part 1355 defines “Permanency hearing” (the hearing required by section 475 [5] [C] of the Social Security Act [42 USC § 675 (5) (C)]) as:
“(1) The hearing required by section 475(5)(C) of the Act to determine the permanency plan for a child in foster care. Within this context, the court . . . determines whether and, if applicable, when the child will be:
“(i) Returned to the parent;
“(ii) Placed for adoption, with the State filing a petition for termination of parental rights;
“(iii) Referred for legal guardianship;
“(iv) Placed permanently with a fit and willing relative; or
“(v) Placed in another planned permanent living arrangement, but only in cases where the State agency has documented to the State court a compelling reason for determining that it would not be in the best interests of the child to follow one of the four speci *888 fied options above.” (45 CFR 1355.20 [a].)
Unfortunately, the court’s review of the federal statutory and regulatory language leads the court back to the same place. None of the proffered goals is the true goal in this case. None of the proffered goals are rational on the facts of this case.
In the final analysis, the court has a legal, ethical and moral obligation to speak the truth. The truth in this case is that the goal is, and should be, finalizing the adoption of the subject child. Any other statement would be a fiction.
Accordingly, the court holds, at least when none of the statutorily enumerated goals are a rational alternative for the subject child, that the court may specify a permanency planning goal other than those specifically enumerated in article 10-A of the Family Court Act. On the facts of this case, the court sets the permanency planning goal for the subject child as finalization of the adoption.

. The subject child’s biological mother executed a judicial surrender on December 13, 2006. The subject child was completely freed for adoption on May 30, 2007, when the parental rights of the subject child’s biological father were terminated.

. The last permanency planning hearing in regard to the subject child was held on October 30, 2008.